# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| **BEVERLY MITCHELL HARRISON, et al.,**<br>  Plaintiffs,<br><br>v.<br><br>**SCRIPPS NETWORKS, INC., et al.,**<br>  Defendants. | )<br>)<br>)<br>)   No. 3:02-CV-489<br>)   Judge Phillips<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This is an action brought under the Americans with Disabilities Act (ADA). Plaintiff Beverly Harrison, a former employee of defendant Scripps Networks, Inc., brought this civil action for damages alleging that Scripps violated the Act when it discriminated against her on the basis of her disability and when it terminated her as a result of her disability and/or request for accommodation. The case was tried to a jury over a six-day period and resulted in a jury verdict in favor of Scripps. Harrison moves the court for an order setting aside the jury verdict and granting a new trial pursuant to Rule 59(a), Federal Rules of Civil Procedure. Harrison also moves to alter or amend the judgment striking that portion of the judgment addressing damages pursuant to Rule 59(e), Federal Rules of Civil Procedure.

1

As grounds for her motion, Harrison states that the verdict is against the weight of the evidence; that an erroneous jury instruction misled and confused the jury and affected its verdict; and that the special jury verdicts are facially inconsistent. For the reasons which follow, Harrison's motion will be denied.

I

Under the Federal Rules of Civil Procedure, a court may set aside a jury verdict and grant a new trial "to all or any of the parties and on all or part of the issues ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). Courts have generally interpreted this language to allow a new trial when a jury has reached a "seriously erroneous result," which may occur when (1) the verdict is against the weight of the evidence; (2) the damages awarded are excessive; or (3) the trial was unfair to the moving party in some fashion (i.e., the proceedings were influenced by prejudice or bias). *See Holmes v. City of Massillon,* 78 F.3d 1041, 1045-46 (6th Cir. 1996). The burden of demonstrating the necessity of a new trial is on the moving party, *Clarksville-Montgomery Co. Sch. Sys. v. U.S. Gypsum Co.,* 925 F.2d 993, 1002 (6th Cir. 1991), and the ultimate decision whether to grant such relief is a matter vested within the sound discretion of the district court. *See Anchor v. O'Toole,* 94 F.3d 1014, 1021 (6th Cir. 1996); *Davis v. Jellico Community Hosp., Inc.,* 912 F.2d 129, 133 (6th Cir. 1990) (limiting a court's responsibility to preventing an injustice); *Browne v. Signal Mountain Nursery,* 286 F.Supp.2d 904, 908 (E.D.Tenn. 2003).

II

Harrison's primary argument contends the jury ignored the clear weight of the evidence in finding that she was not disabled under the ADA. In order to establish discrimination under the ADA, Harrison must show that she is disabled within the meaning of the ADA.[1] A person is disabled for the purposes of the ADA if she (a) has a physical or mental impairment that substantially limits one or more of her major life activities, (b) has a record of such impairment, or (c) is regarded as having such an impairment. 42 U.S.C. § 12101(2).

At trial, Harrison had the burden of proving, by a preponderance of the evidence, each element of her asserted causes of action. *Monette v. Electronic Data Sys, Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996). Harrison proffered the testimony of William Wright, a vocational rehabilitation counselor with the Tennessee Department of Human Services. In evaluating Harrison for disability benefits in the form of educational assistance, Wright found Harrison to be "most severely disabled" on the basis of fibromyalgia and neurotic disorders. Wright's report stated:

> A functional limitation due to the disability is in mobility because she will often have pain and stiffness, especially in the mornings and therefore she cannot work in jobs requiring extensive walking, standing, balancing and climbing. Another functional limitation due to the disability is in work tolerance with muscle groups that are used repetitively, therefore she cannot perform jobs that require repetitive motions and will require frequent rest breaks. Another functional limitation due to the disability is in work skills because she has no work skills

---

[1] Harrison also alleged violation of the Tennessee Human Rights Act and the Tennessee Handicap Act. The same definition of disability applies for claims under the THRA and the THA. *Barnes v. Goodyear Tire & Rubber Co.,* 48 S.W.3d 698 (Tenn. 2000).

3

other than as an actress and records clerk. These limitations
result in a substantial impediment to employment.

Additionally, plaintiff's treating physician, Dr. Kelly Walker, testified that Harrison's fibromyalgia syndrome and the impairments associated with the syndrome such as sleep disorder, pain, depression and bi-polar disorder, required a day-to-day flexible schedule in order for Mrs. Harrison to be able to work. Jane Colvin-Roberson, a vocational expert, testified that Harrison is significantly restricted in her ability to perform a broad range of jobs in various classes and is significantly restricted in her ability to perform in her profession of video production, as compared to the average person having comparable training, skills, and abilities, because of her need for a flexible schedule, which varies from day-to-day. Based on the witnesses' testimony, Harrison avers the clear weight of the evidence overwhelmingly supports the conclusion that she is disabled under the ADA, contrary to the jury's verdict.

Scripps presented opposing proof on the issue of disability as follows:

Harrison's testimony that during her employment with Scripps (such employment continuing on a full-time basis for some 16 months) she routinely performed various housekeeping chores, including loading the dishwasher, cooking, sweeping, using the vacuum, doing the laundry, dusting, cleaning the bathroom, and generally maintaining her home.

Harrison's testimony that she did the grocery shopping and other kinds of shopping for herself and her husband.

Harrison's testimony that she engaged in various types of home improvement projects, including painting, repair of plaster, yard maintenance, and participating in various home remodeling projects. For example, Scripps' Exhibit 76 contains

4

the following statement by Harrison: "I am hoping we can get back in the office by Sunday. I really need to get that finished for the sake of all our sanity. Then, we can have the dining room back and not be so messy. I wish that I had been able to get the floor finished, but it might be better left to the pros."

Harrison's testimony that she tended to her family's personal business (such as paying household bills and preparing tax returns).

Harrison's testimony that she drove herself to places that she needed to go (as well as her admission that she cared for her car when it needed maintenance, including taking it for oil changes).

Harrison's testimony that she engaged in various recreation activities, including swimming, riding a motorcycle with her husband, taking care of two dogs, enjoying a lake home to which she had access, boating, and spending time in the hot tub.

Harrison's ability to attend and successfully complete a course of study at Pellissippi State, where she took a full load of courses and finished a two-year program on schedule.

Harrison's testimony that she engaged in all sorts of work-type activities. Harrison's resume sets forth her skills and qualifications, including: a successful stage career involving acting, training, direction and stage management; employment as a medical record clerk for a 12-physician office; a drama instructor; an educational coordinator for the Bijou Theatrical Academy; a site case trainer for a professional touring troupe; Founder and Executive Director of Theater Max, Inc.; a tour guide for Steve Ellis Tours in Gatlinburg, Tennessee; and a pre-school teacher.

Evidence that Harrison applied for a broad range of jobs after her employment with Scripps ended, including: multi-duty file clerk; youth projects regional coordinator; patient coordinator; volunteer services coordinator; human resources assistant; admissions representative; community organizer; medical receptionist; admissions and records clerk; team leader for Medical Records Department; office assistant; local sales assistant; commercial producer; ophthalmic assistant; traffic assistant of commercials and programming; help line/research

5

information specialist; medical records coordinator; and law firm assistant. Harrison testified that the positions for which she applied constituted a broad range of jobs encompassing a wide range of duties across a number of different industries.

Harrison's testimony that during her employment she engaged in a number of activities occurring in the evening - the time when Harrison claimed she was unable to perform her duties for Scripps. Specifically, Harrison admitted to engaging in theatrical productions in the evening; attending school in the evening; attending various meetings in the evening (including those pertaining to the John Sevier organization or to the International Television Association); attending various social functions in the evening (such as the Ben Atchley dinner and the Scripps Networks Christmas party); having various personal services performed in the evening (such as hair cuts and dental appointments); participating in various volunteer activities in the evening (such as giving tours at the Marble Springs Plantation); and undertaking repairs of her home in the evening.

Dr. Workman's expert testimony that Harrison's fibromyalgia diagnosis is merely a "chart legacy" an initial diagnosis rendered in the past that has carried through to the present simply because it has been "handed down" from chart to chart as a matter of recordkeeping.

Dr. Workman's expert testimony that Harrison's pain is in fact a "conversion reaction," a form of somatization where psychiatric stressors are converted into physical symptoms.

When ruling on a new trial motion claiming the verdict was against the weight of the evidence, the district court should "compare the opposing proofs and weigh the evidence." *Conte v. Gen. Housewares Corp.,* 215 F.3d 628, 637 (6th Cir. 2000); *Toth v. Yoder Co.,* 749 F.2d 1190, 1197 (6th Cir. 1984); *see also J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1487 (6th Cir. 1991). The court should deny the motion and leave the jury's verdict undisturbed so long as it "could reasonably have been reached."

*See Conte,* 215 F.3d at 637-38. Thus, a motion for a new trial should be denied "if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact." *Mosley v. Kelly,* 65 F.Supp.2d 725, 739 (E.D. Tenn. 1999), quoting *Powers v. Bayliner Marine Corp.,* 83 F.3d 789, 796 (6th Cir. 1996). A jury's verdict "should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *J.C. Wyckoff,* 936 F.2d at 1487. Rather, the court must compare the offered evidence and set aside the jury's verdict only if it is against the clear weight of the evidence as a whole. *Webster v. Edward D. Jones & Co.,* 197 F.3d 815, 818 (6th Cir. 1999).

Applying this standard, and having reviewed the evidence and considered the strengths and weaknesses of each side's proof, the court concludes it would not have been unreasonable for the jury to conclude Harrison failed to meet her burden of proof to show that her condition affected her daily activities to the extent that she was disabled within the meaning of the ADA. Further, it would not have been unreasonable for the jury to credit Scripps' evidence showing that Harrison was not substantially limited in a major life activity as a result of her condition, and thus failed to show that she was disabled under the ADA. Viewing the case as a whole, assessing each of the witnesses' credibility, and examining the content and detail of their testimony, the court is unable to conclude the jury's verdict is a "seriously erroneous result," *See Holmes,* 78 F.3d at 1046-47, or runs contrary to the "clear weight of the evidence." *See J.C. Wyckoff,* 936 F.2d at 1487 (stating a jury's verdict "should not be considered unreasonable simply because different inferences and

7

conclusions could have been drawn or because other results are more reasonable"). Accordingly, the court will deny Harrison's motion for a new trial with respect to her claim that the clear weight of the evidence established that she was disabled within the meaning of the ADA.

III

Harrison next states that the evidence showed that she also has a "record of disability" as defined under the ADA. According to EEOC regulations, an individual has a "record of a disability" if she has a history of a mental or physical impairment that substantially limits one or more major life activities. 29 C.F.R. § 1630.2(k). As stated above, Harrison relies on the State of Tennessee certification finding her "most severely disabled" because of fibromyalgia and neurotic disorders. In addition, at the time Harrison was offered a job at Scripps by Brian Fails, she advised him that she had fibromyalgia and needed flexibility in work hours. Fails agreed to hire Harrison on that basis. Dr. Cathy Mathes sent Scripps a letter referencing Harrison's fibromyalgia, her physical and mental health, and her agreement with the recommendation that Harrison have a flexible work schedule due to those impairments. Harrison states that Scripps' employees, Ajamie, Fails, Casey, Rector and Cookson, all knew that she had fibromyalgia before she was terminated and that she had requested a continued flexible work schedule. While this request was denied, Harrison states that Scripps introduced evidence that it "accommodated" her in other ways due to her condition. These "accommodations" prove that Scripps had both a record of Harrison's disability and that Scripps regarded Harrison as disabled. Harrison also points to her Employee Status Forms [Ex. 64, 65], which identify her as an individual

8

with a disability. Again, Harrison avers that the clear weight of this evidence indicates that she satisfied the definition of having a record of a disability, contrary to the jury's verdict.

Scripps responds in opposition stating that the term "disability" under the ADA is a term of art meaning "substantially limited in a major life activity." Thus, a document or statement referencing disability means nothing unless considered in light of the ADA definition. Scripps points out that William Wright did not use the definition of disability specified in the ADA; Wright is not a medical doctor; and he relied on the reports of Harrison's treating physicians, Dr. Walker and Dr. Mathes. Scripps also notes that following completion of her program, Wright certified Harrison as rehabilitated.

Scripps countered the testimony of Harrison's treating physicians with the testimony of Dr. Edward Workman. Dr. Workman testified that the opinions of Drs. Walker and Mathes that Harrison was disabled could not be credited because neither doctor had performed the appropriate diagnostic procedure for identifying fibromyalgia as endorsed by the American Rheumatologic Association ( involving an inspection of eighteen "tender points" on the body), and that Roberson's testimony that Harrison is substantially limited in the major life activity of working should not be credited because Roberson's opinion rested on the assumption that Harrison required a flexible schedule when in fact the most effective treatment for her symptoms would be a standardized schedule.

The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect

9

of that impairment on the life of the individual. Some impairments may be disabling for particular individuals but not for others, depending on the stage of the disease or disorder, the presence of other impairments that combine to make the impairment disabling, or any number of factors. 29 C.F.R. § 1630. In ruling on the parties' motions for summary judgment, the court found a question of fact existed regarding whether Harrison could establish a "record of disability" as defined under the ADA. While Harrison presented evidence supporting her position, Scripps also presented evidence that following Harrison's completion of the State retraining program, Wright certified her as rehabilitated. Scripps also presented the expert testimony of Dr. Workman, who stated that the opinions of Harrison's treating physicians could not be credited because the doctors had not performed the appropriate diagnostic procedures. Further, Dr. Workman testified that Roberson's opinion regarding Harrison's inability to work a broad class of jobs was based on an erroneous assumption that she required a flexible schedule, when in his opinion, Harrison required a standardized schedule. These are questions of credibility. The jury was entitled to reject each party's evidence or credit it in its sole discretion. In the light of the testimony from Dr. Workman, the court cannot conclude the jury was unreasonable in finding in favor of Scripps on this claim. Accordingly, the court will deny Harrison's motion for a new trial on her claim that she has a record of disability within the meaning of the ADA.

IV

Harrison also asserts that the clear weight of the evidence indicates that Scripps regarded her as having a disabling impairment as defined by the ADA. A plaintiff can establish disability under the ADA if her employer treated her as if an impairment

10

substantially limited a major life activity. *Sutton v. United Airlines,* 527 U.S. 471 (1999). There are two ways Harrison can show that Scripps regarded her as disabled: (1) Scripps mistakenly believed that she had a physical impairment that substantially limited one or more major life activities; or (2) Scripps mistakenly believed that an actual, nonlimiting impairment substantially limited one or more major life activities. *Id.* at 489. In both cases, it is necessary that Scripps entertained misperceptions about Harrison - Scripps must believe either that she had a substantially limiting impairment that she did not have or that she had a substantially limiting impairment when, in fact, the impairment was not so limiting. *Id.* Whether Scripps perceived Harrison's condition as a substantial limitation on her ability to work requires a showing that Scripps perceived her as unable to work in a broad class of jobs or a broad range of jobs in various classes. *Moore v. Baptist Memorial Health Care System,* 398 F.3d 469 (6th Cir. 2005). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i).

Harrison points to the following testimony from Scripps' employees as support for her assertion that Scripps regarded her as disabled:

> <u>Bryan Fails</u>. Fails hired Harrison with the understanding that she would work with a flexible schedule after she had disclosed to him she needed that accommodation because she had fibromyalgia syndrome.
>
> Fails converted Harrison's employment status from that of a "project" employee to permanent, full-time employee, knowing that Harrison's need for accommodation would continue due to her fibromyalgia syndrome.

11

Case 3:02-cv-00489   Document 235   Filed 03/10/06   Page 11 of 20   PageID #: 111

> Amy Rector. Rector asked Harrison if she was certain that she should be working at all.
>
> Rector suggested the Employee Assistance Program to Harrison to deal with the stresses in her life.
>
> Rector sent an e-mail to Mary Mincer regarding Harrison as to whether she was a person who might be covered under the ADA.
>
> Rector sent a letter to Dr. Mathes regarding Harrison stating "We understand that fibromyalgia is a serious health condition and we have no doubt that Beverly's symptoms are severe."
>
> Plaintiff's Exhibit 11 was authored by Rector. In paragraph 2, Rector catalogs a number of Harrison's physical ailments, and paragraph 4 notes that Harrison has a handicap tag and is parking in a handicap space. The memo discusses accommodations for Harrison's limitations, and in paragraph 9, Rector documents that she "specifically asked Beverly if she felt she could continue to work."
>
> Katherine Casey. Casey testified that she was aware that Harrison had fibromyalgia and part of the syndrome is difficulty with sleeping and fatigue.
>
> Casey suggested meditation as a way to help Harrison's stress.
>
> Casey told Harrison that she should get some help because if she did not get "control of all of this stuff that was going on" in her head, it was going to be too much for her to handle.

Based on the above-quoted testimony, Harrison asserts that Scripps not only thought that she was unable to perform the job at Scripps because of her impairment, but also that she was unable to perform a class of jobs or a broad range of jobs. Therefore, Harrison argues that the weight of the evidence shows that Scripps regarded her as disabled, contrary to the jury's verdict.

Scripps counters that the testimony relied upon by Harrison to show that Scripps regarded her as disabled does not establish that she was "regarded as disabled" under the ADA. The testimony does not conclusively establish that Harrison had a record of being unable to work a broad class of jobs or that Scripps subjectively regarded her as unable to perform a broad class of jobs.

The testimony that employees of Scripps expressed concern for Harrison's health does not constitute evidence sufficient, as a matter of law, to find that Scripps regarded her as disabled. *See Taylor v. Nimock's Oil Co.,* 214 F.3d 957 (8th Cir. 2000) ("Knowing that an employee may be having difficulties and expressing concern ... does not amount to treating an employee as if she has a permanent disability that substantially limits her life activities). Nor does an Scripps' suggestion that Harrison contact its employee assistant program conclusively establish that Scripps regarded her as disabled. *See Sullivan v. River Valley School Dist.,* 197 F.3d 804 (6th Cir. 1999) (Requesting a mental evaluation does not indicate that an employer regards an employee as disabled). Moreover, in *Ross v. Campbell Soup Co.,* 237 F.3d 701 (6th Cir. 2001), the court held that the plaintiff, in order to show that her employer regarded her as disabled in the major life activity of working, had to show substantial evidence that the employee's medical status played a significant role in the employer's decision to fire that individual, combined with evidence that the employer concocted a pretextual justification for the firing.

At trial, Scripps presented evidence, much of it from Harrison herself, that she lives an active and normal life and is not substantially limited in any major life activity.

13

Scripps also presented evidence that Harrison was not substantially impaired in her ability to perform a broad class of jobs, and in fact, had applied for a broad range of jobs in a number of different industries. After considering this evidence, the jury found that Harrison was not disabled and further found that her inclusion in the reduction in force was not a pretext by Scripps to discriminate against her on the basis of her alleged disability. It is not the role of this court to second guess a verdict, so long as the evidence construed in favor of the prevailing party will support a verdict returned to such party. Viewing and weighing the evidence as a whole, the court concludes that the jury verdict is not against the clear weight of the evidence. Accordingly, the court will deny Harrison's motion for a new trial on her claim that she met the definition of disability under the ADA because Scripps regarded her as disabled.

<u>V</u>

Harrison next contends that she is entitled to a new trial because the jury instructions were confusing, misleading, and prejudicial. The jury charge in this case contained the following instruction to which Harrison objected:

> The defendants have asserted and presented evidence that making the accommodation of allowing plaintiff to report to work before any other employees arrived and thereafter to come and go as she pleased would have constituted an undue hardship.

Harrison asserts this jury instruction gives undue prominence to the theories of Scripps by commenting on the fact that they "presented evidence," including Scripps' theory that Harrison was not disabled. In addition, the use of the phrase "come and go as she pleased," could have misled the jury into thinking that Harrison was not disabled but simply

14

wanted to work her own schedule.  Harrison asserts that the jury charge was improper and highly prejudicial to her.  Thus, Harrison concludes the jury verdict should be vacated and a new trial ordered.

Scripps responds in opposition stating that the instruction is not confusing or misleading as it presented evidence that accommodating Harrison in such a fashion would constitute an undue hardship.  The instruction is nothing more than a straightforward application of the relevant facts to the applicable law.  Scripps avers that the instructions must be considered as a whole, and when considered as such, the instructions in the instant case are not objectionable.

Jury instructions are not erroneous if "they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its determination."  *Kitchen v. Chippewa Valley Schools,* 825 F.2d 1004, 1012 (6th Cir. 1987).  A judgment can be reversed only if the instructions, "viewed as a whole, were confusing, misleading and prejudicial."  *Id.* at 1011; *see also Vance v. Spencer Co. Public Sch.,* 231 F.3d 253, 263 (6th Cir. 2000).

Here, Harrison objects to one specific instruction out of over forty pages of instruction.  The instruction at issue is not confusing, and it comports to the evidence presented by Scripps that Harrison was permitted to work a flexible schedule, but was not permitted to set her own hours without informing her supervisor of the hours she was going to work.  Scripps submitted evidence that allowing Harrison to "come and go as she

15

pleased" would constitute an undue hardship. The court finds the instruction is neither confusing, misleading, nor prejudicial. Harrison has not objected to any other charge in the instructions. Thus, the court's instructions to the jury, viewed as a whole, adequately submitted the issues to the jury, and a new trial is not warranted based on the undue hardship jury instruction. Accordingly, the court will deny Harrison's motion for a new trial on her claim that the jury instructions were confusing, misleading and prejudicial.

## VI

Harrison next asserts that the jury verdict is facially inconsistent in that the jury found that she was not disabled but then found that Scripps' inclusion of her in the reduction in force was not a pretext to discriminate against her on the basis of her disability. Question No. 6 on the verdict form is as follows:

> Do you find from the preponderance of the evidence that plaintiff has proven that defendants' inclusion of plaintiff in the reduction in force was really a pre-text to discriminate against her on the basis of her disability.

Harrison contends that Question 6 assumes that the jury has found that she was disabled. Accordingly, Question 6 should only have been answered in the event the jury determined that she had a disability. By answering "No" to Question 1 on the verdict form, Harrison states it is facially inconsistent for the jury to then answer Question 6, which includes in its premise that Harrison had a disability. Thus, Harrison concludes the jury verdict should be vacated and a new trial ordered.

In response, Scripps asserts that the fact that the jury answered Question 6 in no way calls into question the jury's initial, threshold determination that Harrison was not disabled. In fact, Scripps argues that the jury's answers to Questions 1 and 6 are consistent and reflect the jury's rejection of Harrison's theory of the case on two separate levels. In Question 1, the jury found Harrison not disabled; in Question 6, the jury in effect found that, even assuming that Harrison was disabled, she was not included in Scripps' reduction in force for this reason. Far from demonstrating inconsistency, Scripps' asserts, the jury's answers are consistent and make clear that it rejected Harrison's claims.

Moreover, defendants assert that Harrison failed to object to the verdict form before the case was submitted to the jury and thus has waived this claim. *See, e.g., Babcock v. General Motors Corp.,* 299 F.3d 60, 65-66 (1st Cir. 2002) (holding that plaintiff waived any claim that the special verdict form was unacceptable by failing to object at a time when the court could have taken corrective action). At the very least, Harrison was obligated to raise the issue when the jury announced its verdict. *See, e.g., Stancill v. McKenzie Tank Lines, Inc.,* 497 F.2d 529, 534 (5th Cir. 1974) ("By failing to object to the form of the verdict and answers at the time they were announced by the jury, both parties waived any objection to inconsistencies.").

When faced with a claim that a verdict is inconsistent, the court should "look for a reasonable way to read the answers to interrogatories as expressing a coherent and reasonable view of the case." *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 509 (6th Cir. 1998); *see also Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S.

17

355, 364 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.") Viewing the facts of this case and the court's instructions to the jury as a whole, the court cannot conclude there is an inherent inconsistency in the jury's responses to Questions 1 and 6 on the verdict form. In fact, the jury's answers to these questions show that they consistently rejected Harrison's claim that she was disabled and that she was selected for the reduction in force because of that alleged disability. Accordingly, the court finds no inherent inconsistency in the verdicts rendered by the jury, and the court will deny Harrison's motion for a new trial on this ground.

VII

Lastly, Harrison asserts that the portion of the judgment that states that "Plaintiff has suffered no damages" should be stricken. In support of her assertion, Harrison notes that the verdict form specifically provided that Question 7 should only be answered by the jury if their answer "to either Question No. 3, No. 4, No. 5, or No. 6 above was "Yes." Questions 3 and 4 were not answered, and Questions 5 and 6 were answered "No." The jury ignored the instructions contained in the verdict form, which Harrison argues is an indication that the jury was badly confused. Therefore, Harrison asserts the judgment should be amended to delete that portion that incorporates the jury's answer to Question 7 regarding damages.

Scripps responds in opposition stating that the jury saw fit to find that, notwithstanding its answers to the liability issue, in any event Harrison had not been

18

damaged.  Scripps also avers that a Rule 59(e) motion is an inappropriate vehicle by which to challenge a jury's factual finding.  Moreover, Harrison could have raised an objection to the jury's determination as to damages after the jury verdict was announced but failed to do so.  Thus, Scripps argues Harrison effectively waived any objection to the jury's finding.

Rule 59(e), Federal Rules of Civil Procedure, provides a procedure for correcting "manifest errors of law or fact or considering the import of newly discovered evidence."  *Helton v. ACS Group,* 964 F.Supp 1175, 1182 (E.D.Tenn. 1997).  A motion to alter or amend judgment made pursuant to Rule 59(e) may be made for one of three reasons:  (1) an intervening change of controlling law; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice.  *Id.*  A party should not use the motion to raise arguments which could, and should, have been made before judgment issued.  *McClendon v. B&H Freight Services, Inc.,* 910 F.Supp. 364, 365 (E.D.Tenn. 1995).  Further, Rule 59(e) motions to alter or amend judgment are not proper vehicles for setting aside a jury verdict based on factual findings.  *County of Anderson v. U.S. Gypsum Co.,* 1985 WL 116 (E.D.Tenn. 1985).

Here, Harrison does not attack the jury's determination on any substantive basis, but moves pursuant to Rule 59(e) to amend the judgment to delete that portion reflecting the jury's finding that she suffered no damages.  Harrison's motion is not made pursuant to an intervening change of controlling law and is not based on newly-discovered evidence.  Nor does the jury finding constitute a clear error of law, and the jury's finding is not manifestly unjust.  The jury's finding that Harrison suffered no damages is another

19

indication that the jury rejected Harrison's claims that she was disabled under the ADA and that she was discriminated against on the basis of that alleged disability. Harrison's motion to amend the judgment to strike the jury's finding on damages is without merit and will be denied.

## Conclusion

For the reasons stated above, Harrison's motion for new trial, and to alter or amend the judgment [Doc. 229] is hereby **DENIED**.

**ENTER:**

        s/ Thomas W. Phillips
United States District Judge